IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| EDMUNDO GUERRERO, JR., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | EP-11-CV-449-KC |
| § | |
| TOTAL RENAL CARE, INC. D/B/A/ § | |
| DAVITA A/K/A SIERRA MOBILE § | |
| ACUTE DIALYSIS SERVICES, § | |
| § | |
| Defendant. § | |

# ORDER

On this day, the Court considered Defendant Total Renal Care Inc.'s ("TRC") Motion to Dismiss ("Motion"), ECF No. 8. For the reasons set forth herein, the Motion is **GRANTED** in part and **DENIED** in part.

I. **BACKGROUND**

Plaintiff Edmundo Guerrero was a Staff Registered Nurse whom Defendant had employed since February 21, 2005. Pl.'s Original Compl. ("Complaint") ¶5, ECF No. 1. During his employment, Plaintiff consistently received "excellent" performance evaluations, as well as yearly merit raises. Compl. ¶¶ 6-8.

At some point, Plaintiff became aware that one of Plaintiff's co-workers, Hector Alba ("Alba"), was allegedly committing Medicare and Medicaid fraud by "charging for procedures which were not done and for procedures which were not ordered by a doctor." Compl. ¶ 9. Plaintiff notified Victor Tapia ("Tapia"), a TRC Director, of Alba's fraudulent activity. *See* Compl. ¶10. During Plaintiff's conversation with Tapia, "Tapia became incensed." Compl. ¶

1

12. However, it is unclear whether Tapia's response was in reaction to Plaintiff's allegations of fraud, because Plaintiff indicates that Tapia also threatened to consult the human resources department "about a supposed, trumped up, [sic] complaint concerning Plaintiff, which had also been discussed during that conversation." Compl. ¶12.

After his conversation with Tapia, Plaintiff discussed his suspicions regarding Alba with Timo Briffa ("Briffa"), a Clinical Coordinator. Compl. ¶ 13. Plaintiff told Briffa that he was going to report Alba's fraudulent activities to Tapia's superiors because Plaintiff did not feel that Tapia would prevent further fraud. Compl. ¶ 13.

On approximately August 30, 2011, Tapia terminated Plaintiff's employment. Compl. ¶14. Tapia did not provide Plaintiff with an explanation for the termination. Compl. ¶ 15. At that time, Plaintiff had not yet discussed Alba's allegedly fraudulent behavior with Tapia's supervisors. Compl. ¶14. On November 14, 2011, Plaintiff filed this lawsuit. *See* Compl. 5.

## II.   DISCUSSION

### A.   Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Still, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).

Though a complaint need not contain "detailed" factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation omitted). Thus, to survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570; *Colony Ins.*, 647 F.3d at 252. Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B. Analysis

Plaintiff alleges that Defendant terminated him in retaliation for reporting Alba's fraud in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), and the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. Compl. ¶¶ 16-18.

#### 1. RICO Claims

Defendant requests that the Court dismiss Plaintiff's RICO claim because Plaintiff lacks standing to assert a RICO retaliation claim, and because Plaintiff has failed to satisfy the pleading requirements. Mot. 5-8. Plaintiff admits that, in light of the Supreme Court of the United States's decision in *Beck v. Prupis*, 529 U.S. 494 (2000), he lacks standing to assert a RICO claim. Pl.'s Resp. to Def.'s Mot. to Dismiss ("Response") 2, ECF No. 10. The Court therefore dismisses Plaintiff's RICO claim.[1]

---

[1] Defendant requests that the Court order Plaintiff's counsel to show cause as to why Plaintiff's counsel did not violate Federal Rule of Civil Procedure 11 by signing the Complaint and Plaintiff's RICO statement, "which contained a legally frivolous RICO claim." Def.'s Reply to Pl.'s Mot. to Dismiss Resp. ("Reply") 2 n.1, ECF No. 11. The Court, in its discretion, declines to issue such an order. *See* Fed. R. Civ. P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction." (emphasis added)); Proposed Amendments to Federal Rules of Civil Procedure, Advisory Committee's Notes, *reprinted in* 146 F.R.D. 401, 587 (1993) ("The court has significant discretion in

### 2. Retaliatory discharge under the FCA

"The FCA is the Government's 'primary litigation tool' for recovering losses resulting from fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 (5th Cir. 2010) (citing *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 388 (5th Cir. 2008)). It imposes civil penalties on those who defraud the government by knowingly submitting or causing the submission of false claims for payment to the government. 31 U.S.C. § 3729(a); *Cardinal Health*, 625 F.3d at 267. In addition, § 3730(h) of the FCA contains a whistleblower provision that aims to prevent retaliation against employees who come forward with knowledge of their employer's FCA violations. 31 U.S.C. § 3730(h). Plaintiff alleges that Defendant retaliated against him in violation of this whistleblower provision. Compl. ¶ 16.

#### a. Pleading standard

Defendant argues that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to Plaintiff's claim for retaliatory discharge because the claim is "supported by an allegation of fraud against the government." Mot. 4. Thus, as a threshold issue, the Court must decide whether a claim for retaliatory discharge under the FCA is subject to Rule 9(b)'s pleading standard, or whether Federal Rule of Civil Procedure 8 's pleading standard governs such a claim. Rule 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In contrast, Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R .Civ .P. 8(a).

The Fifth Circuit has held that claims brought under the FCA are subject to Rule 9(b)'s pleading standard; however, these cases did not involve retaliation claims. *See, e.g.*, *Cardinal*

---

determining what sanctions, *if any*, should be imposed for a violation."
(emphasis added)).

*Health, Inc.*, 625 F.3d at 266; *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328-9 (5th Cir. 2003). As a result, the Fifth Circuit has not explicitly held that Rule 9(b) applies to retaliation claims made pursuant to §3730(h). *See Thomas v. ITT Edu. Servs., Inc.*, No. 11-544, 2011 WL 3490081, at *3 (E.D. La. Aug. 10, 2011).

Nevertheless, "[a]ll federal circuit courts of appeal that have faced this issue have reached the conclusion that 31 U.S.C. § 3730(h) claims need only 'meet the Rule 8(a) . . . standard.'" *Id.*[2] These courts of appeal reasoned that because retaliation claims under the FCA are not dependant on allegations of fraud, Rule 9(b)'s heightened standard should not be applied. *See, e.g.*, *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010) (internal quotations omitted) ("Because her retaliation claim did not depend on allegations of fraud, Sanchez's complaint only needed a short and plain statement of the claim showing that [she was] entitled to relief."); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 238 n.23 (1st Cir. 2004), *abrogated on other grounds by Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 2130-31 (2008) ("A retaliation claim under 31 U.S.C. § 3730(h) does not require a showing of fraud and therefore need not meet the heightened pleading requirements of Rule 9(b)."); *cf. Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416 (2005) (stating FCA retaliation claims may still survive even if no false claims were ever actually submitted).

---

[2] Multiple circuits have held that Rule 8 applies to claims under 31 U.S.C. § 3730(h). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008) (stating that "the heightened pleading requirements of Rule 9(b) do not apply to FCA (False Claims Act) retaliation claims"); *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1305 (11th Cir. 2010); *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contr. Co.*, 612 F.3d 724 (4th Cir. 2010); *United States ex rel. Elms v. Accenture LLP*, 341 F. App'x 869, 873 (4th Cir. 2009); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 729 (10th Cir. 2006); *United States ex rel. Karvelas v. Melrose–Wakefield Hosp.*, 360 F.3d 220, 238 n.23 (1st Cir. 2004), *abrogated on other grounds by Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 2130-31 (2008).

The Court agrees that because claims under § 3730(h), at their core, address retaliation issues and not fraud, Rule 8 should govern. The Court therefore applies the Rule 8 pleading standard articulated in *Twombly* and *Ashcroft v. Iqbal* to Plaintiff's FCA retaliation claim. *See* Fed. R. Civ. P. 8; *Twombly*, 550 U.S. at 555-56; *Ashcroft v. Iqbal*, 556 U.S. 662, - - -, 129 S. Ct. 1937, 1949-50 (2009).

### b. Retaliatory discharge

The "whistleblower" provision of the FCA, also known as a qui tam suit, protects employees who take steps to uncover and report an employer's fraudulent submission of claims to the government.[3] *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). Specifically, the statute states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h).[4]

---

[3] "The phrase 'qui tam' is a shortened version of the Latin phrase 'qui tam pro domino rege, quam pro se ipso in hac parte sequitur,' meaning 'who prosecutes this suit as well for the king, as for himself.'" *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 21 F. Supp. 2d 607, 609 (E.D. La. 1998) (quoting 2 William Blackstone, Commentaries on the Law of England, 1722 (1916)). As this definition suggests, a qui tam suit is a lawsuit brought by a private citizen on behalf of the government. *Id.* The FCA has authorized qui tam suits to augment government enforcement since the Civil War. Anna M. W. Burke, *Qui Tam: Blowing the Whistle for Uncle Sam*, 21 Nova L. Rev. 869, 871-72 (1997).

[4] This language is from a recently enacted an amendment to the FCA entitled "Clarifications to the False Claims Act to Reflect the Original Intent of the Law." Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111–21, § 4, 123 Stat. 1617, 1621, 1624–25 (2009). This amendment broadened the protections for whistleblowers. *See* 155 Cong. Rec. E1295-03, E1300, 2009 WL 1544226 (daily ed. June 3, 2009) (statement of Rep. Howard L. Berman). Section 3730(h) previously protected "lawful acts done by [an] employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h) (West 2003).

To state a claim for retaliatory discharge, a plaintiff must show (1) he engaged in activity protected under the statute; (2) his employer knew he engaged in protected activity; and (3) that he was discharged because he engaged in this protected activity. *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 371-72 (5th Cir. 2011).  Defendant claims Plaintiff has failed to allege that he engaged in a protected activity, or in the alternative, that Defendant knew Plaintiff engaged in a protected activity.  Mot. 9-10; Def.'s Reply to Pl.'s Mot. to Dismiss Resp. ("Reply") 2-4, ECF No. 11.  The Court addresses each argument in turn.

### i.     Protected activity

In his Complaint, Plaintiff claims that he informed Tapia that Alba "was committing Medicare/Medicaid fraud."  Compl. ¶ 10.  Additionally, Plaintiff claims that he told Briffa that he planned to report Alba's conduct to Tapia's supervisors.  Compl. ¶ 13.  Plaintiff argues that these actions constitute protected activities under the FCA.  *See* Resp. 3.

Defendant, on the other hand, argues that "an employee's investigation of his employer's activities does not rise to the level of protected activity" unless Plaintiff can show that a "viable" FCA claim existed.  Mot. 9.  According to Defendant, Plaintiff has failed to "point to a single concrete example of likely fraud."  Mot. 9; *see also* Reply 2-4.  Without such an example, Defendant claims that Plaintiff cannot show that there was a "distinct possibility that a viable FCA action could be filed."  Mot. 9 (quoting *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 869 (4th Cir. 1999)).

Further, Defendant argues that Plaintiff must "plead and prove that he 'reasonably believe[d] in good faith' that TRC engaged in Medicare/Medicaid fraud, and that he reported that reasonable good-faith belief to TRC."  Reply 2.  According to Defendant, Plaintiff has not alleged a good faith belief because Plaintiff has not alleged any facts describing the fraud.  Reply.

2-4. Without alleging such facts, Defendant argues that Plaintiff cannot successfully state a retaliation claim. Reply 2-4.

Section 3730(h) protects employees from retaliation "because of lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1). The "in furtherance" language in the statute indicates there must be a "nexus" between the protected activity and the filing or potential filing of a qui tam suit. *See Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 187 (3d Cir. 2001) (quoting *McKenzie v. BellSouth Telecomm., Inc.*, 219 F.3d 508, 515 (6th Cir. 2000)). However, as Congress recently made clear in its 2009 amendment of the statute, conduct may be protected "whether or not such steps are *clearly* in furtherance of a potential or actual qui tam action." 155 Cong. Rec. E1295-03, E1300, 2009 WL 1544226 (daily ed. June 3, 2009) (statement of Rep. Howard L. Berman) (emphasis added). Thus, an employee must have "taken steps" towards the exposure of the false claims, such as investigating or complaining about fraud. *United States ex rel Gray v. Lockheed Martin Corp.*, No. 05-4201, 2010 WL 672017, at *3 (E.D. La. Feb. 19, 2010).

Courts consider the internal reporting of fraudulent activity to a supervisor to be a step in furtherance of uncovering fraud, and thus protected under the FCA. *See Robertson*, 32 F.3d at 951; *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 741 n.9 (D.C. Cir. 1998) ("[I]nternal reporting of false claims is itself an example of a protected activity."). Indeed, Congress specifically amended the language of § 3730(h) in order to ensure that § 3730(h) protects internal reporting:

> This language is intended to make clear that [§3730(h)] protects not only steps taken in furtherance of a potential or actual qui tam action, but also steps taken to remedy the misconduct through methods such as internal reporting to a supervisor or company compliance department . . . .

155 Cong. Rec. E1295-03, at E1300.

However, in order to constitute protected conduct, an employee's internal report must specifically allege fraudulent claims for federal funds and not merely address concerns about general misconduct. *Patton*, 418 F. App'x at 372 ("For internal complaints to constitute protected activity 'in furtherance of' a qui tam action, the complaints must concern false or fraudulent claims for payment submitted to the government."); *Bouknight v. Hous. Indep. Sch. Dist.*, No. H-06-1057, 2008 WL 110427, at *4 (S.D. Tex. Jan. 8, 2008) ("A plaintiff must do more than investigate or complain about an employer's improper conduct; a plaintiff must have specifically investigated or complained about the employer making false claims for federal funds."). For example, in *Robertson*, the Fifth Circuit approvingly cited several district courts which held that § 3730(h) protects internal whistleblowers who reported "concern[s] about the company defrauding the government" to their supervisors. *Robertson*, 32 F.3d at 951.[5] The *Robertson* court indicated that, in order to be protected, employers should use terms such as "'illegal,' 'unlawful,' or 'qui tam action'" in reporting such concerns to supervisors. *Id.* Following *Robertson*, the Fifth Circuit more recently stated that a plaintiff could not state a claim for retaliatory discharge without showing that he "characterized his concerns as involving illegal, unlawful, or false-claims investigations." *Sealed Appellant I v. Sealed Appellee I*, 156 F. App'x 630, 635 (5th Cir. 2005).

---

[5] Although the Fifth Circuit approved of these district court cases on their reasoning, the court distinguished these cases on their facts from the case before the court. *Robertson*, 32 F.3d at 951 (citing *Clemes v. Del Norte Cnty. Unified Sch. Dist.*, 843 F. Supp. 583, 595-96 (N.D. Cal. 1994), *not followed on other grounds by Maynard v. City of San Jose*, 37 F.3d 1396 (9th Cir. 1994) (holding employee who had "brought evidence of fraud against the government to the attention of his immediate supervisors, as well as to state officials and the Department of Justice" had stated a claim for relief under § 3730(h)); *United States ex rel. Kent v. Aiello*, 836 F. Supp. 720, 723-24 (E.D. Cal. 1993) ("[A] plaintiff who alleges that she suffered harm after making an internal corporate complaint relative to fraud against the Government states a cause of action under section 3730(h), even if no lawsuit was ever filed by the Government or by another qui tam informant."); *Neal v. Honeywell, Inc.*, 826 F. Supp. 266, 271 (N.D. Ill. 1993) ("[F]ederal whistleblower protection laws are to be broadly construed to cover internal whistleblowers, even where the specific conduct at issue does not fall within a literal reading of the statute.")).

Notably, an employee does not need to file a qui tam suit to be protected by § 3730(h). *Graham Cnty.*, 545 U.S. at 416 ("A well-pleaded retaliation complaint need not allege that the defendant submitted a false claim."); *see also Robertson*, 32 F.3d at 951; *Hopkins v. Actions, Inc. of Brazoria Cnty.*, 985 F. Supp. 706, 709 (S.D. Tex. 1997). Indeed, an employee need not have even "discovered a completed case" by the time the retaliation takes place. *Yesudian*, 153 F.3d at 740. "Congress' intent [was] to protect employees while they are collecting information about a possible fraud, *before* they have put all the pieces of the puzzle together." *Id.* Thus, § 3730(h) still protects an employee even if "the target of an investigation or action to be filed was innocent." *Graham Cnty.*, 545 U.S. at 416.

Here, Plaintiff has specifically pleaded that he reported to a supervisor that "a Registered Nurse . . . working for Defendant was committing Medicare/Medicaid *fraud* by charging for procedures that were not done and charging for procedures which had not been ordered by a medical doctor." Compl. ¶10 (emphasis added). Further, Plaintiff has alleged that he reported this fraud to Briffa, and indicated that he planned to make additional internal reports about the fraud to Tapia's supervisors. Compl. ¶ 12. On a motion to dismiss, the court only tests the sufficiency of the pleadings, and does not evaluate the parties' proof as it would under a summary judgment motion. *See* Fed. R. Civ. P. 8; *Kelley v. KIMC Investments Inc.*, No. 3:10-cv-2384-L, 2012 WL 639283, at *6 (N.D. Tex. Feb. 28, 2012). Because Plaintiff specifically alleges that he reported fraudulent claims for federal funds, Plaintiff's allegation is sufficient to state a claim for a protected activity. *See Patton*, 418 F. App'x at 372; *Robertson*, 32 F.3d at 951.

Defendant nevertheless argues that Plaintiff must detail the specific facts supporting a "good faith" belief that fraud was occurring in order to sufficiently plead a protected activity. Reply 2-3. Defendant relies on two cases from the Seventh and Ninth Circuits for the proposition that a plaintiff must plead a good faith belief of fraud. Reply 2-3 (citing *Moore v.*

*Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845-46 (9th Cir. 2002); *Fanslow v. Chi. Mfg. Ctr.*, 384 F.3d 469, 480 (7th Cir. 2004)). These circuits have adopted a two-pronged test to determine whether an employee has engaged in a protected activity. *See Moore*, 275 F.3d at 845-46; *Fanslow*, 384 F.3d at 480. This test inquires into the subjective and objective reasonableness of the possibility of an FCA action by inquiring whether "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Moore*, 275 F.3d at 845-26; *see also Fanslow*, 384 F.3d at 480.

These cases are not persuasive. First, the Court has not found case law indicating that the Fifth Circuit has adopted this two-prong inquiry. Indeed, the Court is unaware of any Fifth Circuit case which requires a Plaintiff to assert facts at this stage in the litigation establishing the reasonableness of any investigations or complaints about fraud. Further, both *Moore* and *Fanslow* apply this two-prong test in reviews of trial court decisions on summary judgment. *Moore*, 275 F.3d at 844; *Fanslow*, 384 F.3d at 478. Such a test may be appropriate at the summary judgment stage of a proceeding; however, here, the Plaintiff need only "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Moreover, the Court finds that applying such a standard in this procedural posture of the case would interfere with the purposes of § 3730(h). Congress enacted the False Claims Act in order to discourage fraud against the government and to encourage persons with knowledge of fraud to come forward. *See* S. Rep. No. 345, at 4-6 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5269-71. Thus, "[p]rotected activity should . . . be interpreted broadly." *McKenzie*, 219 F.3d at 514-15 (quoting S. Rep. No. 99-345, at 35); *see also Neal v. Honeywell, Inc.*, 826 F. Supp. 266, 271 (N.D. Ill.1993) ("[F]ederal whistleblower protection laws are to be broadly construed to cover internal whistleblowers, even where the specific conduct at issue does not fall within a literal reading of the statute."). Therefore, as discussed above, § 3730(h) protects those

who report fraudulent activity even if it is later established that no fraud ever occurred. *Graham Cnty.*, 545 U.S. at 416.

Requiring a plaintiff to include detailed facts regarding the underlying fraud in their complaint is tantamount to requiring a plaintiff to "put all the pieces of the puzzle together" before allowing them access to the courts. *See Yesudian*, 153 F.3d at 740. In the absence of further guidance from a binding authority regarding the necessity of pleading a good faith belief, the Court declines to adopt such a reading of § 3730(h).

### ii.     Employer knowledge

Defendant claims that it had no notice that Plaintiff engaged in a protected activity because Plaintiff neither "informed TRC of any of the details concerning the alleged Medicare/Medicaid fraud," nor "provided TRC with any substantive information whatsoever concerning this fraud." Mot. 10. On the other hand, Plaintiff claims that because he "specifically told his supervisor that Hector Alba was committing fraud," Defendant was on notice of the protected conduct. Resp. 3-4.

A successful retaliation claim requires Defendant to have known Plaintiff engaged in a protected activity. *Patton*, 418 F. App'x at 371-72; *Robertson*, 32 F.3d at 951. "It is insufficient for the relator to show that the employer knew that the whistleblower had concerns about compliance with the law; []he must show that the employer was on notice of the distinct possibility of qui tam litigation." *United States ex rel Gonzales v. Fresnius Med. Care N. Am.*, 748 F. Supp. 2d 95, 104 (W.D. Tex. 2010) (citing *Sealed Appellant I*, 156 F. App'x at 630; *Robertson*, 32 F.3d at 952; *Gray*, 2010 WL 672017, at *4.)

Similar to the protected activity analysis, courts decide whether an employer was on notice of possible qui tam litigation by analyzing whether the employee characterized his or her complaints in terms of fraud or illegality. *See Robertson*, 32 F.3d at 952 (holding employers lacked knowledge when "Robertson never characterized his concerns as involving illegal,

12

unlawful, or false-claims investigations"); *see also Hutchins* 253 F.3d 176, 188 n.8 (3d Cir. 2001) (citing *Yesudian*, 153 F.3d at 742) (stating that the analysis used to determine whether an employer has been provided with notice of the possibility of qui tam litigation is similar to an analysis of whether employee engaged in protected activity). Consequently, "an employee may put her employer on notice of possible False Claims Act litigation by making internal reports that alert the employer to fraudulent or illegal conduct." *Sanchez*, 596 F.3d at 1304; *see also Eberhardt*, 167 F.3d at 868-69 & n.2 (stating the once an employee expresses concerns about the likelihood of fraud to an employer, the notice requirement is met).

For example, in *Sealed Appellant I*, the plaintiff's retaliatory discharge claim failed to withstand the defendant's Rule 12(b)(6) challenge because the plaintiff neither characterized his concerns as related to fraud, nor informed his supervisors that he was concerned about the presence of fraud. 156 F. App'x at 634-35. As such, the plaintiff failed to allege a sufficient factual basis from which the court could determine that the employer knew of any protected activities. *Id.* Further, in *Patton*, the Fifth Circuit emphasized the content of the employee's complaints in deciding that an employer did not have notice that the employee had engaged in a protected activity. 418 F. App'x at 372. The court found that because the employee's internal reports concerned unsafe construction methods rather than fraud, the reports were insufficient to give the employer the type of notice required by § 3730(h). *Id.*; *see also Gray*, 2010 WL 672017, at *4 (holding employer did not have knowledge when an employee "never informed anyone . . . that he was investigating false claims or pursuing an FCA lawsuit" but instead merely complained about "job dissatisfaction").

Here, Plaintiff has pleaded that he internally reported a co-worker's submission of fraudulent claims to the government to two supervisors. Compl. ¶¶ 10, 13. While the case law indicates that Plaintiff must have specifically reported fraud to a supervisor, it does not follow that a plaintiff must have reported the fraud *in detail*, as Defendant would have the Court hold.

Such a requirement is contrary to the Rule 8 pleading standard as described in *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 555-56; *Iqbal*, 129 S. Ct. at 1949-50. Moreover, as stated above, such a requirement would be contrary to Congress's intent to "protect employees while they are collecting information about a possible fraud, *before* they have put all the pieces of the puzzle together." *Yesudian*, 153 F.3d at 740. Plaintiff has therefore sufficiently alleged employer knowledge.

### III. CONCLUSION

For the foregoing reasons, Defendant Total Renal Care Inc.'s Motion to Dismiss, ECF No. 8, is **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** with respect to Plaintiff's claim under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. The Motion is **DENIED** with respect to Plaintiff's claim under the False Claims Act, 31 U.S.C. § 3730(h).

**SO ORDERED**.

**SIGNED** on this 12th day of March, 2012.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE